IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LENDELL JAMES DEVELOPMENT GROUP, LLC, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| GREGORY L. PRICE, *et al.,* | * |
| | * |
| Defendants. | |

Case No. TJS-20-513

\*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This case arises out of a Maryland developer's unsuccessful attempt to purchase real property for development in Ohio. Plaintiffs Lendell James Development Group, LLC ("LJDG") and Justin Grubby brought this case against Defendants Gregory L. Price and Price Custom Homes, LLC ("PCH") to recover damages that resulted from the Defendants' alleged interference with the Plaintiffs' attempt to purchase the real estate.[1] ECF No. 39. The parties' cross-motions for summary judgment are now pending before the Court. Having considered the parties' submissions (ECF Nos. 41, 42, 43, 44, 45, 46, 47 & 48), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Plaintiffs' Motion (ECF No. 41) will be denied and the Defendants' Cross-Motion (ECF No. 42) will be granted in part and denied in part.[2]

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have a magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 18.

[2] The Plaintiffs' "Motion to Strike Exhibit 1 to Their Opposition to Defendants' Cross-Motion for Summary Judgment and to Substitute Corrected Exhibit 1" (ECF No. 47) will be granted. The Plaintiffs mistakenly attached the wrong signature page to the affidavit appended to their Motion for Partial Summary Judgment. The only difference between the affidavit that was mistakenly filed and the affidavit that the Plaintiffs wish to substitute is the name and signature on

I.      **Background**

Unless noted otherwise, the following facts are not in dispute. LJDG is a Maryland limited liability company owned by Grubby. In March 2019, LJDG entered into a purchase and sales agreement ("Sales Contract") with Wolfinger Family Farms, LLC ("Wolfinger") for the purchase of 160 acres of unimproved real property ("Property") located in Fairfield County, Ohio.[3] ECF No. 39 ¶ 9. LJDG intended to develop over 60 single-family homes on the Property. *Id.* ¶ 12. The Sales Contract provided that LJDG had a period of time to perform a feasibility study if it elected to do so, and that the settlement date would be within 60 days of the expiration of the deadline to complete the feasibility study, and in any event no later than December 31, 2019. ECF No. 41-2 at 1-2. If the settlement did not proceed by December 31, 2019, the Sales Contract was to be terminated. *Id.* at 2.

After entering into the Sales Contract, LJDG and Grubby "expended substantial time and resources . . . investigating and analyzing development opportunities for the Property." ECF No. 39 ¶ 12. Grubby was introduced to Price, who was already familiar with the Property,[4] and the two discussed "the possibility of working together in some fashion related to the development of the Property." *Id.* ¶¶ 13-14. In furtherance of Grubby and Price's joint interest in developing the Property, the two entered into a "Real Estate Non-Disclosure Agreement" ("NDA"). ECF No. 41-3.

_____

the signature page. The Defendants oppose the Plaintiffs motion on grounds that are entirely without merit. The interests of justice require that the Plaintiffs' Motion (ECF No. 47) be granted.

[3] LJDG was registered as a Maryland limited liability corporation on May 23, 2019, when it filed its articles of organization with the State. *See* ECF Nos. 45 at 5; 45-1 at 1. As discussed below, the Defendants argue that LJDG cannot rely on actions it took before it was legally formed to bind the Defendants to any contract. The issue of whether LJDG was capable of entering into the Sales Contract is not at issue in this lawsuit.

[4] Before the Plaintiffs entered into the Sales Contract with Wolfinger, Price had discussed purchasing the Property from Wolfinger. *See* ECF Nos. 43 at 21; 43-16 at 22.

In pertinent part, the NDA provides that its purpose is to allow Price and his company, PCH, "to properly evaluate a possible acquisition or investment of" the Property. *Id.* at 1. The NDA states that in consideration of LJDG providing "disclosure of confidential and proprietary information" to Price and PCH, they would maintain the confidentiality of the information. *Id.* at 1-2. The NDA defines "Confidential Information" to include "all technical, marketing, financial and other business information and material that is confidential and proprietary," regardless of its form. *Id.* at 1. The NDA excludes four categories from this definition: (1) information that was in Price or PCH's possession before its disclosure by LJDG; (2) information that became public through no act or breach by Price or PCH; (3) information received by Price or PCH from a third party who was not bound by a confidentiality agreement; and (4) information that has been "developed by" Price or PCH, or by a third party, "without any use of, reliance on, or reference to any Confidential Information." *Id.* The NDA further provides that Price and PCH return or destroy all Confidential Information at the "conclusion of nay negotiation, agreement or transaction relating to the Property," upon termination of the NDA, or at the request of LJDG. *Id.*

In addition to the restrictions the NDA placed on Price and PCH's use of Confidential Information, it prohibited Price and PCH from contacting or "enter[ing] into any discussion" with "any of the Property's employees, suppliers, customers, or tenants" without the express written permission of LJDG. *Id.* at 3. The NDA defines the "Property" as the "Parcel No. 008-00318-00 : 6814 Brandt Road NW and Parcel No. 008-00351-00: 6812 Brandt Road NW, Bloom Township, Fairfield County, Ohio." *Id.* at 1. The NDA does not mention Wolfinger or its managing members, Andrew and Leslie Wolfinger.

The NDA contains an integration clause ("This Agreement sets forth the entire understanding and agreement between the parties . . . ."); a choice-of-law clause ("This Agreement

will be governed and construed in accordance with the laws of the State of Maryland . . . ."); and a severability clause ("If any provision of this Agreement is held to be illegal, invalid or unenforceable, such provision shall be eliminated or limited to the minimum extent such that the . . . the remaining provisions will not be affected or impaired."). *Id.* at 2-3. The NDA states that its "Effective Date" is May 20, 2019. *Id.* at 1. The NDA was signed by Grubby on June 24, 2019, and by Price on July 3, 2019. *Id.* at 3.

Under the protection of the NDA, LJDG disclosed to Price and PCH purportedly Confidential Information concerning its plans for acquiring and developing the Property, including a copy of the Sales Contract, construction and engineering reports, testing and feasibility reports, financial projections, and plans for the subdivision of lots and obtaining local government approval. ECF No. 39 ¶¶ 20-21. LJDG "expended significant cost, expenses, and resources" in connection with the information it shared with Price and PCH. *Id.* ¶¶ 22-23.

In early December 2019, LJDG attempted to extend the agreed-upon settlement date for the purchase of the Property because an application was still pending local government approval. *Id.* ¶ 28. Without local government approval of this application, LJDG would be unable to obtain the necessary financing to buy the Property. *Id.* ¶ 29. And without the necessary financing, LJDG would be unable to fulfill its obligations under the Sales Contract. *See* ECF No. 41 at 9 n.2. Wolfinger did not agree to LJDG's proposed terms to extend the settlement date.[5] As a result, LJDG did not complete the purchase and the Sales Contract was terminated. ECF No. 39 ¶¶ 30-31. After LJDG's purchase of the Property fell through, Price and his business partner, Robert Seaton, formed a new entity (Price-Seaton, LLC) and purchased the Property directly from Wolfinger. *Id.* ¶ 42.

---

[5] The settlement date had already been extended multiple times. ECF No. 43 at 10.

The following facts are in dispute. The Plaintiffs allege that after the Sales Contract was terminated they discovered that Price "had been engaging in secret back-channel communications" with Wolfinger. *Id.* ¶ 32. The Plaintiffs allege that Price engaged in these communications in an attempt to purchase the Property directly from Wolfinger, cutting out LJDG from the transaction. *Id.* ¶ 36. But even while Price engaged in talks with Wolfinger to buy the Property, he continued to communicate with LJDG, feigning interest in a deal with LJDG. *Id.* ¶ 38. The Plaintiffs allege that Price's communications with Wolfinger violated the NDA and "improperly influenced" Wolfinger's decision regarding whether to extend the settlement date under the Sales Contract. *Id.* ¶ 41.

The Plaintiffs allege that the Defendants used Confidential Information in connection with Price-Seaton, LLC's purchase and development of the Property, in violation of the NDA. *Id.* ¶¶ 43-44. The Plaintiffs also assert that Price and PCH have refused to reimburse them for the expenses LJDG incurred in connection with its attempt to purchase the Property, and that Price and PCH have been unjustly enriched through their conduct. *Id.* ¶¶ 50-52.

Plaintiffs filed this lawsuit against the Defendants on February 26, 2020. ECF No. 1. Discovery has been completed. *See* ECF No. 35. The parties' cross-motions for summary judgment (ECF No. 41 & 42) have been fully briefed and are ripe for ruling.

## II.   Discussion

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence

exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). When reviewing cross-motions for summary judgment, each motion is to "be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). A party may not rest upon the mere allegations or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B.    Plaintiffs' Motion for Summary Judgment

The Plaintiffs move for summary judgment as to liability on their claim for breach of contract (Count I of the Second Amended Complaint, ECF No. 39). ECF No. 41. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a

contractual obligation and that the defendant breached that obligation."[6] *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). When interpreting contracts, "the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or intended it to mean; where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Bd. of Trustees of State Colleges v. Sherman*, 280 Md. 373, 380 (1977). A contracting party is not bound merely by the assumptions or beliefs of the other contracting party, but is instead bound by the contract itself. *Gill v. Computer Equip. Corp.*, 266 Md. 170, 179 (1972).

To establish the existence of a valid contract, a plaintiff must show (1) an unrevoked offer made by one party and accepted by the other; (2) mutual assent by the parties to the material terms of the agreement; and (3) consideration. *County Comm'rs v. Forty West Builders, Inc.*, 178 Md. App. 328, 377 (2008). Consideration is "a benefit to the promisor or a detriment to the promisee." *Harford Cty. v. Town of Bel Air*, 348 Md. 363, 382 (1998). It "necessitates that 'a performance or a return promise must be bargained for.'" *Chernick v. Chernick*, 327 Md. 470, 479 (1992) (quoting Restatement (Second) of Contracts § 71 (1981)). A performance is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. Forbearance to exercise a right or pursue a claim, or an agreement to forbear, constitutes sufficient consideration to support a promise or agreement. *Id.* (internal quotation marks and citations omitted).

The Plaintiffs argue that they are entitled to summary judgment as to liability on their breach of contract claim because the evidence is undisputed that the Defendants "materially

---

[6] Consistent with the choice-of-law clause of the NDA and the parties' briefs, the Court will apply Maryland law.

breached the NDA by engaging in secret back channel negotiations directly with [Wolfinger] to buy the Property that was then under contract by LJDG." ECF No. 41 at 19. In support of their argument, the Plaintiffs point to uncontroverted evidence that Price communicated with Wolfinger about the Property while the NDA was in effect, and that he did so without permission from LJDG. As a result of these communications, the Plaintiffs' bargaining power with Wolfinger was compromised. *Id*. at 20.

The Plaintiffs have two theories for their argument. The simpler theory, and the one that the Plaintiffs chiefly rely on, is that the Defendants' mere contact with Wolfinger was a violation of the NDA. Because the Defendants did not have the permission of LJDG to communicate with Wolfinger, the Plaintiffs argue, any contact that the Defendants had with him amounted to a breach of contract. The second theory is that the Defendants breached the NDA by making use of Confidential Information in their communications with Wolfinger. The Plaintiffs have failed to show that they are entitled to judgment as a matter of law on either of these theories.

Regarding the Plaintiffs' principal theory, the Court finds that the NDA did not prohibit the Defendants from merely communicating with Wolfinger. The NDA provides, in pertinent part:

> **Article I: The Property**
> In order to allow the Buyer [defined in part as "Greg Price – Price Custom Homes"] to properly evaluate a possible acquisition or investment of **Parcel No. 008-00318- 00 : 6814 Brandt Road NW and Parcel No. 008-00351-00: 6812 Brandt Road NW, Bloom Township, Fairfield County, Ohio** (hereinafter known as the "Property"), the Seller [defined as Lendell James Development Group, LLC] will furnish the Buyer with confidential and proprietary information. The Buyer shows genuine interest in the Property and understands and acknowledges the sensitive nature of the confidential information.
>
> **Article V: General Provisions**
>
> * * *

**D. Contact.** Buyer shall not contact any of the Property's employees, suppliers, customers or tenants, nor enter into any discussion with the above-mentioned, at the Property without the express written permission of the Seller.

ECF No. 41-3 at 1, 3 (emphasis in original).

The Plaintiffs argue that the NDA prohibited Price from communicating directly with Wolfinger without LJDG's permission. ECF No. 41 at 21. This reading of the no-contact provision is contrary to the plain, unambiguous meaning of the NDA. The NDA does not prohibit the Defendants from direct contact with the Property's owner (Wolfinger); it prohibits contact with "the Property's employees, suppliers, customers or tenants." ECF No. 41-3 at 3. The word "owner" is not included in the NDA's no-contact provision. The Plaintiffs have not submitted any evidence that Wolfinger or his company were employees, suppliers, customers, or tenants of the Property.[7] Because the NDA did not prohibit the Defendants from merely communicating with Wolfinger or his company, the Plaintiffs have failed to establish that the Defendants breached the NDA by communicating with Wolfinger.

The Plaintiffs point to evidence that Price thought the NDA prohibited him from contacting Wolfinger without LJDG's permission.[8] ECF No. 44 at 10. But Price's subjective interpretation of the NDA is of no moment when the language of the no-contact provision is unambiguous. *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 376 Md. 157, 167 (2003) (explaining that because Maryland follows the law of objective contract interpretation, a "contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean

---

[7] There is mention of a residence (defined as a "Retained Lot" in the Sales Contract) that was located on the Property, but it appears that neither Wolfinger nor his company resided there, so they would not qualify as "tenants" of the Property. *See* ECF Nos. 41 at 9, 41-1 at 3; 41-2 at 1 & 43-16 at 14.

[8] The Defendants dispute the Plaintiffs' interpretation of Price's deposition testimony. ECF No. 46 at 7-8. This dispute is immaterial to the resolution of the Plaintiffs' Motion.

at the time of execution; rather, if a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine.") (internal quotation marks omitted). The Plaintiffs also argue that the "clear intent" of the no-contact provision was "to preclude Defendants from communicating with the owner of the subject property." ECF No. 44 at 10. This may be what the parties had in mind when they signed the NDA, but it is not what is reflected in the unambiguous language of the no-contact provision. *Auction & Est. Representatives, Inc. v. Ashton*, 354 Md. 333, 340 (1999) ("[T]he clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean."). The terms of the no-contact provision are clear and unambiguous. The NDA prohibited the Defendants from contacting four categories of people, but it did not prohibit the Defendants from contacting the Property's owners.

The Plaintiffs are also not entitled to summary judgment based on their theory that the Defendants improperly used Confidential Information in their communications with Wolfinger because the facts on this point are disputed. ECF No. 44 at 14-19. Because genuine issues of material fact are in dispute regarding whether the Defendants used confidential information in violation of the NDA, the Plaintiffs are not entitled to summary judgment as to liability based on this theory.

Accordingly, the Plaintiffs have failed to establish that they are entitled to judgment as a matter of law as to liability on the breach of contract claim. The Plaintiffs' Motion for Partial Summary Judgment (ECF No. 41) will be denied.

### C.  The Defendants' Cross-Motion for Summary Judgment

The Defendants move for summary judgment as to all of the Plaintiffs' claims. ECF Nos. 42 & 43.[9]

### 1.  Breach of Contract

The Defendants present a number of arguments as to why they are entitled to summary judgment on the Plaintiffs' breach of contract claim (ECF No. 43 at 13-17). None of the arguments have merit.

The Defendants argue that LJDG did not exist as of the effective date of the NDA, so the NDA cannot be binding on the Defendants. *Id.* at 13. The Defendants are correct that LJDG was registered with the State of Maryland on May 23, 2019, three days after the NDA's stated effective date. But the NDA was not signed by the parties until June 24, 2019, and July 3, 2019, well after LJDG was registered with the State. LJDG was a valid legal entity at the time the parties entered into the NDA. Even assuming that the NDA's effective date of May 23, 2019, is unenforceable, the NDA contains a severability clause that operates to prevent avoidance of the entire contract if one provision (e.g., the effective date) is found to be unenforceable. And to the extent that the effective date of the NDA is ambiguous after severing this clause from the contract, the Court may look to parol evidence to determine when the parties intended the NDA to become effective. *See Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337, 348 (1974). This evidence indicates that, at the latest, the parties intended the NDA to become effective on July 3, 2019, when it was signed by both parties.

---

[9] The main document filed at ECF No. 42 is the same as the main document filed at ECF No. 43, but the filing at ECF No. 43 includes attachments.

The Defendants also argue, as best as the Court can discern, that the NDA cannot be enforced because it is unfair. *Id.* at 14-15. For a contract to be declared invalid as unconscionable there must be a showing of both procedural and substantive unconscionability. *Freedman v. Comcast Corp.*, 190 Md. App. 179, 207-208 (2010). The Defendants have not made the showing necessary to permit the Court to find that the NDA is both procedurally and substantively unconscionable. Furthermore, the Defendants have not cited any authority to support their argument that a contract may be declared invalid simply because one party subjectively believes it is unfair.

The Defendants argue that the NDA is void for lack of consideration. ECF No. 43 at 16-17. This argument is without merit. "In Maryland either detriment to the promisor or benefit to the promisee is sufficient valuable consideration to support a contract." *Shimp v. Shimp*, 287 Md. 372, 385 (1980). "[M]utual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be detrimental to the promisor or beneficial to the promisee, and neither of which is rendered void by any rule of law other than that relating to consideration, are sufficient consideration for one another." *Id.* at 386 (quoting *Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 156 Md. 346, 365 (1929)). The NDA specifically provides that LJDG would provide Confidential Information to the Defendants in exchange for the Defendants' agreement to abide by the terms of the NDA. This is valid consideration for the NDA to be an enforceable contract.

The Defendants argue that they are entitled to summary judgment on the breach of contract claim "because no confidential information existed." ECF No. 43 at 17-21. They note that the NDA "places no limitations on the right to LJDG to disclose 'confidential' information to third parties." *Id.* at 17. The Defendants reason that once Confidential Information is shared with third

parties not covered by the NDA, "that information is immediately deemed public information." *Id.* The Defendants assert that Grubby "repeatedly" shared the Plaintiffs' Confidential Information with third parties not bound by the NDA, rendering all of the Confidential Information publicly available. *Id.* at 18. The Defendants also point to other factors that indicate that the Plaintiffs' Confidential Information was actually publicly available, and not protected from disclosure by the NDA: (1) some information was publicly filed with the local government or otherwise mirrored information that the Defendants were in possession of prior to signing the NDA; (2) the Plaintiffs shared Confidential Information with third parties not bound by the NDA, who in turn shared the information with others; (3) the Plaintiffs took no steps to protect the secrecy of their Confidential Information and freely exchanged the information over means that were not encrypted or otherwise secure; (4) the Plaintiffs' Confidential Information was limited in value; (5) the Plaintiffs did not incur significant expenses in obtaining or creating the Confidential Information; and (6) the Plaintiffs' Confidential Information could be easily replicated using standard practices of the construction and development industries. *Id.* at 18-20. Finally, the Defendants argue that "Mr. Price did not use any information that was obtained from LJDG in his communications with Mr. Wolfinger." *Id.* at 21.

The facts regarding the existence of Confidential Information and what the Defendants did with it are in dispute. *See* ECF No. 44 at 14-19. The Plaintiffs acknowledge that some documents provided to the Defendants were also filed with the local government, but they claim that others were not. *Id.* at 14. The Plaintiffs also note that the "only specific individuals identified by Defendants as having allegedly received Confidential Information from LJDG are LJDG's own agents," and that other information shared with "other builders/investors" did not include "information such as acquisition pricing, construction and development costs, per-lot profit

margins, and other confidential financial projections," which was confidential and provided to the Defendants. *Id.* at 15-16. As to the Defendants' other arguments (regarding the limited value and easy replicability of the Confidential Information and whether the information was used by the Defendants in connection with their communications with Wolfinger), the Court notes that it cannot make factual determinations on summary judgment. For these reasons, the Court finds that there are material disputes of fact that preclude the Court for awarding summary judgment to the Defendants on the Plaintiffs' breach of contract claim. And to the extent that certain facts are not in dispute, the Court finds that the Defendants have failed to show that they are entitled to judgment as a matter of law.

### 2.    Tortious Interference

The Defendants argue that they are entitled to summary judgment on the Plaintiffs' claims for intentional interference with economic advantage (Count III) and tortious interference with contract (Count IV). ECF No. 43 at 22-24. The tort of intentional interference with contractual or business relations is "well-established in Maryland," *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296 (1994), and "arises only out of the relationships between three parties, the parties to a contract or other economic relationship (P and T) and the interferer (D)." *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 154 (1989). The tort has "two general manifestations." *Macklin*, 334 Md. at 297. The first manifestation is often described as "'inducing the breach of an existing contract,'" and the second, "'more broadly,'" constitutes "'maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract.'" *Blondell v. Littlepage*, 413 Md. 96, 125 (2010) (citation omitted); *Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2011 WL 6141464, at *4 (D. Md. Dec. 9, 2011).

The Maryland Court of Appeals has explained: "While the two manifestations of the tort share an underlying rationale, i.e., 'under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation,' they differ in their tolerance of interference." *Macklin*, 334 Md. at 298; *Webb*, 2011 WL 6141464, at *4. Under the first scenario, "where a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984). "A broader right to interfere with economic relations exists" under the second scenario, "where no contract or a contract terminable at will is involved." *Id.* at 69-70.

A claim of tortious interference with an existing contract has five required elements: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Coastal Lab'ys, Inc. v. Jolly*, No. CV RDB-20-2227, 2020 WL 6874332, at *13 (D. Md. Nov. 23, 2020). Intent can be proven "by showing that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff." *Macklin*, 334 Md. at 301; *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, No. DKC-2002-1565, 2007 WL 9782461, at *3 (D. Md. Sept. 17, 2007). "A defendant has not induced a breach of contract under a tortious interference theory when the third party . . . has already repudiated the contract in advance of the alleged inducement[,] because the defendant's conduct could not have induced the breach under these circumstances." *Sensormatic*, 2007 WL 9782461, at *4 (citing *Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate Inc.*, 208 F.3d 210, at *6 (4th Cir. Mar. 6, 2000) (unpublished table opinion)).

The Defendants argue that the evidence is undisputed that the "Sales Contract between Mr. Wolfinger and LJDG failed due to LJDG's unilateral termination of the contract, LJDG's financial issues and LJDG's extensions and delayed closing." ECF No. 43 at 23. In addition, the Defendants argue, there is no evidence that they "interfered with or made the Sales Contract between Mr. Wolfinger and LJDG impossible to perform." *Id.* The Defendants note that Price "encouraged Mr. Wolfinger to fulfill the Sales Contract with LJDG," and only stated he would be interested in the property if the Sales Contract "fell through." *Id.*

The Plaintiffs point to evidence that Price feigned interest in negotiating a deal with LJDG in order to "string it along" so that he could negotiate a separate, secret agreement with Wolfinger to acquire the Property. ECF No. 44 at 21-22. By doing so, the Plaintiffs argue, Price "undermined LJDG's bargaining power in negotiations with [Wolfinger] for an extension of the settlement date." *Id.* at 22. And evidence of Price's "initial denials and cover up is further indicia that [the Defendants'] actions were deliberate and malicious." *Id.*

It is undisputed that LJDG terminated the Sales Contract with Wolfinger because it was unable to secure financing on time. ECF No. 41 at 8-10. It may be, as the Plaintiffs argue, that one of the reasons Wolfinger did not agree to extend the settlement date was that he knew that Price also wanted to purchase the Property. But Wolfinger did not terminate or breach the Sales Contract; LJDG did. For this reason, this case is unlike *Lake Shore Investors v. Rite Aid Corp.*, 67 Md. App. 743 (1985), which both parties cite in their briefs. In *Lake Shore*, a contract between the plaintiff and a third party was terminated by the third party due to the defendant Rite Aid's interference with that contract. Here, in contrast, the Sales Contract was terminated by LJDG. LJDG terminated the contract because it could not secure the necessary financing to purchase the Property by the settlement date. ECF No. 41 at 9. LJDG's inability to secure the necessary financing on time was

caused by a delay in the local government's approval of the final plat that LJDG had submitted for its development of the Property. There is no suggestion that the Defendants caused the local government to delay final plat approval. And there is no evidence that the Defendants somehow caused LJDG to breach the Sales Contract or that they made performance under the contract impossible. Without the necessary financing, LJDG's only options were to extend the settlement date (a contract modification to which Wolfinger would not agree, at least on LJDG's terms, *see* ECF No. 41-10 at 1-2) or to terminate the contract.

The Court does not hold, as the Defendants argue, that a tortious interference with contract claim can never lie where a plaintiff is the party to breach or withdraw from the contract. Judge Hollander addressed such a case in *Webb*, 2011 WL 6141464, at *4. In *Webb*, unlike this case, the plaintiff's withdrawal from the contract at issue was caused by the defendant's misconduct (unlawfully threatening to remove the plaintiff's tenant's possessions from their residence without legal process). Here, the uncontroverted evidence is that the Plaintiffs terminated the Sales Contract because they were unable to secure the necessary financing by the agreed-upon settlement date. The Defendants' conduct had nothing to do with the Plaintiffs' ability to secure financing. It may be, as the Plaintiffs argue, that Wolfinger was unwilling to extend the settlement date because the Defendants had indicated their willingness to purchase the Property. But to the extent that the Defendants contributed to Wolfinger's inflexibility (this point is in dispute), it was only in relation to a potential modification of the Sales Contract. There is no evidence that the Defendants interfered with the Plaintiffs' ability to secure financing to purchase the Property by the agreed settlement date. This is what caused the Plaintiffs to terminate the Sales Contract. As such, the Plaintiffs' claim for tortious interference with contract is not viable. The Defendants are entitled to summary judgment on the Plaintiffs' claim for tortious interference with contract (Count IV).

The Defendants are also entitled to summary judgment on the Plaintiffs' claim for tortious interference with economic advantage. "Under Maryland law, the elements of the tort of wrongful interference with contractual or business relationships are (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice) and (4) actual damage and loss resulting." *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 481 (D. Md. 2005) (internal quotation marks and modification omitted) (citing *Lyon v. Campbell*, 120 Md. App. 412 (1998) and *Willner v. Silverman*, 109 Md. 341 (1909)). "For conduct to be actionable under this theory of tortious interference the defendant's conduct must be independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Ultrasound Imaging*, 358 F. Supp. 2d at 481 (internal quotation marks omitted) (citing *Alexander v. Evander*, 336 Md. 635 (1994)). Maryland's Court of Appeals has provided an illustrative list of "the types of wrongful or unlawful acts that could form the basis for malicious interference with economic relations." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153 (2000). These acts include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* Because a "broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved," *Ultrasound Imaging*, 358 F. Supp. 2d at 481, a plaintiff must prove more egregious acts of interference to prevail on a claim for tortious interference with economic advantage. *Webb*, 2011 WL 6141464, at *4 ("A broader right to interfere with economic relations exists under the second scenario, where no contract or a contract terminable at will is involved.") (internal quotation marks omitted).

There is no allegation that the Defendants engaged in any wrongful conduct of the type made actionable by this tort under Maryland law. The Plaintiffs' claim is based on evidence that the Defendants breached the NDA by using confidential information to try to purchase the Property directly from Wolfinger. At worst, the evidence suggests that the Defendants breached the NDA and engaged in unsavory business practices. But breach of contract and underhanded business practices are not sufficiently egregious to be similar to the acts laid out in *Berry & Gould*. For these reasons, the Defendants' motion will granted as to the Plaintiffs' claim for tortious interference with economic advantage (Count III).

### 3.   Unjust Enrichment

The Defendants argue that they are entitled to summary judgment on the Plaintiffs' claim for unjust enrichment (Count II). In Maryland, a claim for unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value. *Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*, No. CCB-20-3061, 2021 WL 1909592, at *2 (D. Md. May 12, 2021) (citing *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007)). "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (1998)); *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants*, 243 Md. App. 62, 70 (2019). "An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing." *Id.* (internal quotation marks omitted)).

There are four narrow exceptions to the general rule that a party may not bring an unjust enrichment claim where the subject matter is covered by an express contract: "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (quoting *Dashiell*, 358 Md. at 100). Maryland courts strongly disfavor the application of these exceptions. *Bubba Gump*, 243 Md. App. at 72 ("No reported decision applying Maryland law has ever upheld a judgment based on any of these exceptions."). The Plaintiffs do not maintain that any of the four exceptions noted in *Bubba Gump* apply here. Accordingly, the Plaintiffs' unjust enrichment claim can only survive summary judgment to the extent that the subject matter of the claim is not covered by an express contract.

There are two express contracts at issue. The primary contract is the NDA, the existence of which is not in dispute. ECF No. 46 at 16 ("There is no basis for Plaintiffs' unjust enrichment claim because a contract between the parties covers the subject matter of the dispute."). Because the NDA is a valid contract, the Plaintiffs' unjust enrichment claim cannot survive summary judgment to the extent that the Plaintiffs seek to use the claim to recover for the Defendants' breach of the NDA.

The other express contract is the Defendants' alleged agreement to reimburse the Plaintiffs for the costs that the Plaintiffs incurred in their unsuccessful attempt to purchase the Property from Wolfinger. *See* ECF No. 39 ¶¶ 45-47. The existence of this contract is in dispute. *See* ECF Nos. 41-9 at 5; 43 at 12 & 43-15 at 65-68. And, importantly, the subject matter of this contract (the Defendants' promise to reimburse the Plaintiffs for certain costs) is not covered by the NDA. Because the existence and validity of the second contract is in dispute, the Plaintiffs' unjust enrichment claim must be permitted to proceed. A reasonable jury could conclude that the

Defendants promised to reimburse the Plaintiffs for the costs and expenses associated with the attempted purchase of the Property and that the agreement amounted to an enforceable contract (in which case the Plaintiffs could not prevail on their claim for unjust enrichment). Or a reasonable jury could conclude that no such contract existed, or that it is invalid (in which case the Plaintiffs could potentially prevail on their claim for unjust enrichment). Because the Court cannot determine whether the Plaintiffs will prevail on their claim that the Defendants breached the contract regarding the reimbursement of costs, "it would be premature to bar [the Plaintiffs] from pursuing [their] alternative claim of unjust enrichment."[10] *Botts v. Johns Hopkins Univ.*, No. ELH-20-1335, 2021 WL 1561520, at *18 (D. Md. Apr. 21, 2021) (collecting cases where courts have permitted unjust enrichment claims to proceed alongside breach of contract claims where the existence of the contract was in dispute).

### 4.    Constructive Trust

The Plaintiffs have voluntarily dismissed Count V of the Amended Complaint (constructive trust) as a separate cause of action, but they "continue to seek this remedy as relief" for their other claims. Pursuant to Fed. R. Civ. P. 41(a)(2), the Court approves the Plaintiffs' voluntary dismissal of the constructive trust claim as a separate cause of action. This dismissal is without prejudice to the Plaintiffs' right to seek the remedy of constructive trust in connection with their remaining claims.

---

[10] Because the Court cannot make factual determinations on issues of disputed fact at summary judgment, the Court rejects the Defendants' argument regarding the Plaintiffs' alleged bad faith and unclean hands. ECF No. 43 at 30-32. Whether the Plaintiffs have "unclean hands" is in dispute and is a matter for a jury to resolve.

**III.     Conclusion**

For the reasons set forth above, the Plaintiffs' Motion for Partial Summary Judgment (ECF No. 41) is denied, and the Defendants' Cross-Motion for Summary Judgment (ECF No. 42) is granted in part and denied in part. The Defendants are awarded summary judgment as to the Plaintiffs' tortious interference claims (Counts III and IV) and as to the Plaintiff's unjust enrichment claim (Count II) to the extent that the Plaintiffs seek to recover for anything besides the Defendants' failure to reimburse the Plaintiffs for the costs incurred in connection with their unsuccessful purchase of the Property. Otherwise, the Defendants' Cross-Motion is denied. The Court approves of the Plaintiffs' voluntary dismissal of the standalone claim for constructive trust (Count V) under the terms stated by the Plaintiffs.

An Order will accompany this opinion.

June 9, 2021                                         _____/s/_____
Date                                                   Timothy J. Sullivan
                                                       United States Magistrate Judge